# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 07-05076-01-CR-SW-RED |
| | ) | |
| JASON JONES, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b), the above-styled criminal action was referred to the undersigned for preliminary review. The case is before the Court on defendant's Motion to Dismiss Indictment [Doc. # 37]. The government responded to the motion [Doc. # 38], and defendant filed a reply [Doc. # 41].

Defendant asserts three theories in support of his motion to dismiss. He contends that the government should be forced to honor the representations of Alcohol, Tobacco and Firearms ["ATF"] Agent Chris Wiegner to his state attorney that the federal government would not prosecute him based on the facts of this case. Defendant also asserts that the government's failure to honor Agent Wiegner's representations coupled with its failure to lodge a detainer in a timely manner on the instant indictment amounts to government misconduct. Third, he contends that, in bringing this indictment, the U. S. Attorney's Office has violated the Department of Justice's Petite policy. He asserts that because of the government's misconduct, his constitutional right to due process was

1

violated.

The pertinent facts of this case are that defendant, who had a prior criminal conviction, was apprehended with stolen firearms by the Lamar Police Department on October 1, 2007. A criminal complaint was filed against defendant in the Circuit Court for Barton County, Missouri, on that date, charging him with receiving stolen property. Defendant was provided a state public defender on October 2, and on October 5, attorney Joseph G. Zuzul entered his appearance. Soon after defendant's arrest, ATF Agent Chris Wiegner was notified by the Lamar Police Department of their investigation of defendant, and according to the government, was told that federal criminal charges might lie against defendant. On October 5, 2007, ATF Agent Angie Kaighin was contacted by Mike Dobbins of the Missouri Department of Probation and Parole with regard to the same investigation. Agent Kaighin forwarded the police report from Lamar to the U.S. Attorney's Office for resolution on that date. She indicated that she was going to give the case to Mike Oliver, Supervisory Assistant for the U.S. Attorney's Office, to "accept or decline" it. [Government's Exhibit 1]. On October 15, 2007, Agent Wiegner interviewed Katrina Wilson, defendant's girlfriend, regarding the facts of this case. Ms. Wilson had been with defendant at the time of the arrest, and was in the Vernon County Jail. According to the government, on or before October 31, 2007, the U.S. Attorney's Office opted to pursue federal charges against defendant and Katrina Wilson.

On October 31, defendant appeared in Barton County for a preliminary hearing; the case was continued until November 13, 2007. Also on the 31st, Mr. Zuzul noted on his case tracking form to "check w/ Feds." [Government's Exhibit 3]. He noted Agent Wiegner's name and number on that form as well. According to defendant, on November 9, Mr. Zuzul telephoned Agent Wiegner to "confirm Mr. Zuzul's understanding that the federal government would not be pursuing charges

2

against Mr. Jones based on the facts of this case." [Defendant's Motion to Dismiss Indictment, at 2]. On November 13, 2007, defendant waived his preliminary hearing and entered an *Alford* plea in state court to receiving stolen property. During the plea colloquy, Mr. Zuzul stated, "we've also been told by the local police and the prosecutor that the federal government is not going to pursue charges based on this incident?" to which defendant responded, "Yes." [Defendant's Reply to Government's Response, at 2]. His attorney also asked him whether he understood that this was technically not a part of the plea bargain, to which defendant responded, "yeah." [Reply, at 2]. He was asked, "this is not the federal prosecutor, you understand that?" Defendant responded, "Yes." [Reply, at 2]. The attorney then said, "You understand that he has talked, I think the local police and prosecutors told us that the feds are not going to prosecute, and I've called them myself, do you understand that?" [Reply, at 2]. Defendant indicated that he did; his attorney then concluded, "And, they've told me they aren't going to prosecute." [Id.]. Defendant responded, "Yes." [Id.].

A federal case was formally opened on November 1, 2007 by the U.S. Attorney's office. Defendant was indicted for being a felon in possession of a firearm and unlawfully possessing stolen firearms on December 13, 2007.

Defendant asserts that Agent Wiegner made a promise to his state attorney that he would not be indicted in federal court for the conduct underlying the state charge, and that because he relied on this representation and suffered a state conviction on the charge, the indictment should be dismissed. The government does not disagree that Agent Wiegner made an incorrect statement to defendant's counsel. Rather, it frames the issue as whether a federal agent's incorrect statement to a state defense attorney concerning the possibility of future federal prosecution must be honored. It contends that the Eighth Circuit has no published opinions that squarely address this issue, but that

3

generally, case law from other circuits indicates that fundamental fairness requires that such promises be respected, provided that the agent is authorized to make the promise, and the defendant relies to his detriment on the promise. See e.g., United States v. Streebing, 987 F.2d 368, 372 (6th Cir.), cert. denied, 508 U.S. 961, (1993); United States v. Kettering, 861 F.2d 675, 678 (11th Cir.1988). The government calls to the Court's attention an unpublished opinion from the Eighth Circuit, in which the Court held in a 2000 case that "any promise the FBI agent made regarding the calculation of Dennie's Guidelines range is unenforceable, as Dennie failed to demonstrate the agent was authorized to make such a promise." Dennie, 2000 WL 268492, 1 (8th Cir. 2000). The government submits that no promise was made by Agent Wiegner, but rather, that the agent "simply expressed his incorrect belief that the defendant would not be prosecuted for a federal weapons violation." [Government's Response to Defendant's Motion, at 7]. It is also asserted that defendant cannot show that the agent was authorized to make promises on behalf of the U.S. Attorney's Office or that he was prejudiced as a result of the agent's statements.

According to defendant, his attorney believed that Agent Wiegner had the authority to make such statements on behalf of the federal government. He relies on Mr. Zuzul's experience as a state public defender; when Mr. Zuzul spoke with Agent Wiegner, that was the only name he had; and Agent Wiegner never indicated or informed Mr. Zuzul that he did not have such authority or that Mr. Zuzul needed to contact the U.S. Attorney's Office. Further, he contends that state law enforcement personnel were also informed by Agent Wiegner that the federal government would not pursue charges against defendant. Defendant contends that this case is about the cumulative effect of the government's conduct, and that when "Agent Wiegner spoke with attorney, Joe Zuzul, he was well aware of the context and purpose of the conversation. Agent Wiegner was informed

4

and was well aware that Mr. Jones was entering into a plea agreement with the state and the position of the federal government with respect to federal charges was key to Mr. Jones's decisions in his state case." [Defendant's Reply, at 4]. He also asserts that the U.S. Attorney's office was equally well aware that defendant was facing state charges. Defendant asserts that this case is distinguishable from most of the case law cited by the government because the ATF agent was the only contact person who Mr. Zuzul was provided by law enforcement, and he spoke to Mr. Zuzul about a matter that had nothing to do with the investigation. "Agent Wiegner had not yet referred the case to the U.S. Attorney's office for prosecution and, in that referrals for prosecution come from the agents involved in a case, it is frankly natural for a state attorney to contact the agent to ask whether the case would be sent to the U.S. Attorney's office for prosecution. Additionally, because referrals for prosecution in federal cases come from the agent investigating the case, that agent has 'actual' authority to make binding statements to an attorney about potential federal prosecutions." [Reply, at 6]. Further, defendant contends that the government, through the ATF agent, was directly involved in misleading defendant into entering a state plea agreement based on the same conduct at issue in the federal charges. "The ATF and the U.S. Attorney's offices in Springfield, Missouri are comprised of a relatively small network of individuals. It is frankly difficult to accept that this matter did not come up during conversations between the U.S. Attorney's office and ATF. At no time, did anyone from these offices ever attempt to contact Mr. Jones's attorney to let him know of the federal indictment." [Reply, at 5].

The Court has carefully reviewed the arguments of the parties, as well as relevant case law. Initially, it appears that the government has conceded that Agent Wiegner did make a statement that indicated his mistaken belief that the federal government would not prosecute

5

defendant. In <u>Streebing</u>, the Sixth Circuit stated that while "promises made during plea bargaining and analogous contexts" should be respected as a general rule, the rule is subject to two conditions: The agent must have had authority to make the promise, and the defendant must have relied to his detriment on the promise. 987 F.2d at 372. There is no evidence in the record, however, to support defendant's contention that the agent actually made a legally binding promise that defendant would not be federally prosecuted for a weapons' violation. Even assuming, however, that the misstatement from Agent Wiegner to defendant's attorney constituted a promise not to prosecute defendant in federal court, defendant has failed to meet his burden of proving that the agent had the authority to make the promise, and that he relied to his detriment on it. Despite defendant's assertions and speculations to the contrary, the record is devoid of any evidence establishing that Agent Wiegner was authorized to make promises or representations to defendant. Defendant's only support for his belief that Agent Wiegner had such authority is that his attorney was experienced; he only had Agent Wiegner's name; and Agent Wiegner never said he didn't have authority. He also contends that the offices in Springfield are small and close knit, suggesting that there was an unspoken agreement that agents had the authority to make prosecutorial decisions.

On the other hand, the government asserts that, even admitting that Agent Wiegner made an incorrect statement, he did not have authority to make any such promise. It is contended that the government had already opened a case against defendant when the conversation allegedly occurred. A review of the record supports this assertion. ATF Agent Kaighen indicated on October 5 that she was going to forward the Lamar police report to Mike Oliver of the U.S. Attorney's Office for a decision on whether to prosecute. The government formally opened a

6

Case 3:07-cr-05076-BCW   Document 42   Filed 02/24/09   Page 6 of 11

defendant. In <u>Streebing</u>, the Sixth Circuit stated that while "promises made during plea bargaining and analogous contexts" should be respected as a general rule, the rule is subject to two conditions: The agent must have had authority to make the promise, and the defendant must have relied to his detriment on the promise. 987 F.2d at 372. There is no evidence in the record, however, to support defendant's contention that the agent actually made a legally binding promise that defendant would not be federally prosecuted for a weapons' violation. Even assuming, however, that the misstatement from Agent Wiegner to defendant's attorney constituted a promise not to prosecute defendant in federal court, defendant has failed to meet his burden of proving that the agent had the authority to make the promise, and that he relied to his detriment on it. Despite defendant's assertions and speculations to the contrary, the record is devoid of any evidence establishing that Agent Wiegner was authorized to make promises or representations to defendant. Defendant's only support for his belief that Agent Wiegner had such authority is that his attorney was experienced; he only had Agent Wiegner's name; and Agent Wiegner never said he didn't have authority. He also contends that the offices in Springfield are small and close knit, suggesting that there was an unspoken agreement that agents had the authority to make prosecutorial decisions.

On the other hand, the government asserts that, even admitting that Agent Wiegner made an incorrect statement, he did not have authority to make any such promise. It is contended that the government had already opened a case against defendant when the conversation allegedly occurred. A review of the record supports this assertion. ATF Agent Kaighen indicated on October 5 that she was going to forward the Lamar police report to Mike Oliver of the U.S. Attorney's Office for a decision on whether to prosecute. The government formally opened a

criminal complaint against defendant and Ms. Watson on November 1, 2007. [Government's Exhibit 2]. The conversation between Mr. Zuzul and Agent Wiegner is not alleged to have occurred until November 9. There is no support in the record, moreover, for defendant's bare assertions that Agent Wiegner was "well aware that Mr. Jones was entering into a plea agreement with the state and the position of the federal government with respect to federal charges was key to Mr. Jones's decisions in his state case . . . ." [Defendant's Reply, at 4]. In fact, the plea colloquy indicates that defendant was advised by his state attorney that the information that the federal government was not going to pursue charges based on this incident was not technically part of the state plea bargain and he stated that he understood this. He also indicated that he understood that he was not dealing with the federal prosecutor in his state case. Regarding defendant relying to his detriment on the belief that he would not be prosecuted federally, it appears that the difference had he not believed this is that he would have gone to trial on the state charges. Whether or not he would have been convicted is an open question. While the existence of a state conviction is obviously a detriment to any individual, defendant has failed to establish that he suffered any type of prejudice that rises to the level of fundamental unfairness calling for dismissal of the indictment. The Court is not willing to assume that Agent Wiegner or the prosecutors had any reason to encourage defendant to plead in state court. In fact, the plea colloquy indicates otherwise. The record does not suggest that the agent was offering defendant some kind of immunity from prosecution. The Court is of the opinion that defendant has failed to establish that the agent had any authority to make the alleged promise that he would not be federally prosecuted; he has also failed to demonstrate prejudice requiring dismissal of the indictment.    Regarding his allegations that the government violated the Petite Policy,

7

defendant acknowledges that the Petite Policy ordinarily confers no substantive rights on a criminal defendant. He contends, however, that the Eighth Circuit Court of Appeals has suggested that when the government's violation of the Petite Policy is combined with outrageous government conduct, then it can constitute a denial of due process, in reliance on United States v. Larsen, 427 F.3d 1091 (8th Cir. 2005) (issue not decided because the defendant failed to present evidence). In the instant case, defendant contends that the government's violation of the Petite policy constitutes a denial of due process because: Agent Wiegner promised defendant's attorney that the federal government would not prosecute defendant on this conduct; defendant relied on this promise in entering his *Alford* plea; the agent submitted this case for prosecution eleven days after making the promise; and although the indictment was returned one month after he plead guilty and was convicted on the state case, the government did not lodge a detainer until July 22, 2008, well beyond the time limit for him to challenge his state conviction.

The Petite policy, see Petite v. United States, 361 U.S. 529, 531(1960), is an internal policy of the Department of Justice to the effect that a federal prosecution should not be based on substantially the same acts as were the basis for a prior state prosecution unless there is a compelling federal interest. However, the policy "confers no substantive rights on a criminal defendant, and thus [defendant] could obtain no relief based on it even if the government had acted contrary to it here." Larsen, 427 F.3d at 1094 (citing United States v. Leathers, 354 F.3d 955, 962 & 962 n. 5 (8th Cir. 2004), cert. denied, 543 U.S. 844 (2004)). In Leathers, the Eighth Circuit declined to examine the application of the Petite policy for evidence of vindictive prosecution. The Court held that, "[t]he Petite policy is a discretionary policy of the Department of Justice. It does not confer any substantive rights and its application cannot form the basis for

8

a claim of improper prosecution." Id. at 962. Therefore, even if the prosecution violated the Petite policy by charging defendant with conduct for which he had already been convicted in state court, the policy does not provide defendant with any basis to dismiss the indictment. See United States v. Edwards, 563 F.Supp.2d 977, 1011-12 (D.Minn. 2008).

Defendant relies on Larsen, in which the Eighth Circuit acknowledged that the defendant had made the argument that a violation of the policy combined with outrageous government conduct constituted a denial of due process. It did not decide this issue, however, because the defendant did not present any evidence of outrageous government conduct. 427 F.3d at 1094. Similarly in this case, the record does not reveal conduct sufficient to require dismissal of an indictment--conduct "so outrageous and shocking that it exceed[s] the bounds of fundamental fairness." United States v. Finley, 175 F.3d 645 (8th Cir. 1999).

Finally, defendant argues that the cumulative effect of the government's alleged misconduct rises to the level of a denial of due process, without providing any case law or sound legal argument to support that claim. He asserts that the government's delay in lodging the detainer prejudiced him because the time had expired to challenge his state conviction on the grounds that substantial consideration for the agreement was not true.

After careful review, the Court agrees with the government that defendant's claim that it committed misconduct by not lodging a detainer in a timely fashion is without legal support because it is never under an obligation to lodge a detainer against any defendant. The fact that the detainer was not lodged against him until July of 2008 cannot constitute governmental misconduct when the government is under no obligation to lodge a detainer at any particular time. See generally United States v. Mauro, 436 U.S. 340, 358 (1978)(discussing a detainer

9

under the Interstate Agreement on Detainers Act as a mechanism, initiated with discretion by a prosecutor or law enforcement officer, to put officials at the incarcerating institution on notice that the prisoner is wanted in another jurisdiction for trial upon release from prison). Under the Act, the time limits imposed are to ensure speedy resolution of a case after the detainer is lodged. Clearly, the Act was not intended to address pre-lodging time limits, as the purpose underlying the Act is to insure that a prisoner is not prejudiced by an outstanding detainer, and that there is an expeditious disposition of the charges after the detainer has been lodged. Id. at 360. In this case, the detainer was lodged on July 22, 2008; on August 8, 2008, the government filed a request for Writ of Habeas Corpus Ad Prosequendum with this Court to obtain defendant's presence in this jurisdiction, whereupon he made his first appearance before the undersigned on September 2, 2008. Despite defendant's unsubstantiated assertions, there is no basis to conclude that the government acted outrageously by lodging the detainer when it did. Defendant has provided no case law to support his contention, and his legal arguments are unconvincing. He claims to have suffered immense prejudice by virtue of his state conviction, which he could not challenge because he did not become aware of the federal charges until his state time limits for attacking his conviction had passed. Whatever prejudice defendant might have suffered cannot be said to have resulted from the fact that the detainer was not lodged until July of 2008, when the federal government had no duty to lodge the detainer at any given time. Defendant relies on sheer speculation for the contention that he might have been somehow able to challenge his *Alford* plea had he known of pending federal charges.

Based on a full review of the record, the arguments advanced by the parties, and relevant case law, the Court finds that it must be recommended that defendant's Motion to Dismiss

10

Indictment be denied. The record indicates that he expressly stated during the state plea colloquy that he understood that a representation that the federal government was not going to pursue charges based on the state incident was not technically a part of the state plea bargain. Second, the record provided by defendant does not substantiate allegations of outrageous government conduct that would serve as the basis for a dismissal of the indictment because the detainer wasn't lodged earlier. Last, he has failed to demonstrate that he was denied his constitutional right to due process because the government violated its Petite policy and engaged in cumulative misconduct. For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 22 of the United States District Court for the Western District of Missouri,

      RECOMMENDED that defendant's Motion to Dismiss Indictment be denied.


                                      /s/ James C. England
                                      JAMES C. ENGLAND
                         Chief United States Magistrate Judge


Date: 2/24/09